### Downie vs. Hoover.

A railroad company whose charter gives it the general power to make all contracts which its convenience or interest may require, has power, in carrying out the enterprise authorized by its charter, to assign its stock subscriptions, there being nothing in the charter imposing any restriction in that respect.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint in this case stated, that in May, 1856, the defendant, *Hoover*, made a subscription for five shares of $100 each, of the capital stock of the Milwaukee and Beloit Railroad Company, to be paid at such times as the directors of said company should prescribe, &c., with a condition that the subscription should not be binding until the sum of $100,000 should be subscribed to the capital stock of said company, in the city of Milwaukee, independent of corporate aid; and after alleging the subscription of that amount to the stock of said company, in the city of Milwaukee, as required by said condition, and the making of various calls by the directors, for the payment of instalments upon stock subscriptions, under which the whole sum subscribed by the defendant had become due and payable, averred, that before the commencement of this action, the said railroad company, by an instrument in writing, duly executed, for a valuable consideration, and for purposes connected with the business of the company, assigned and transferred to the plaintiff, the said subscription of the defendant to the capital stock of said company, and all claim and demand of said company against the defendant, arising by means thereof. It alleged, also, demand of payment from the defendant, non-payment, &c. The defendant demurred to the complaint, upon the grounds, that it appeared upon the face of the complaint, that the plaintiff had no legal capacity to sue, and that the complaint did not state facts sufficient to constitute a cause of action.

The circuit court sustained the demurrer, and from the order sustaining the same the plaintiff appealed.

*Adams & Pitkins*, for appellant:

A corporation can make all contracts which are necessary

and usual in the course of the business it transacts, as means to enable it to effect the objects of its institution, unless expressly prohibited by law or its charter. *Barry vs. Merchants' Exchange Co.*, 1 Sandf. Ch., 280; Angell & Ames on Corp., 153, § 187; Pierce on Am. Railroad Law, 513, 515; 1 Kyd on Corp., 108; *Hoyt vs. Thompson,*, 3 Sandf., Ch. R., 416; 1 Selden, 320; 19 N. Y., 207; 32 N. H., 504, 507; 5 Ohio State, 59. They cited, also, as to the power of the company to make the assignment. *Farmers' Loan & Trust Co. vs. Perry*, 3 Sandf. Ch., 339; *Curtis vs. Leavitt*, 1 Smith (N. Y.), 62–66, 169, 219–222, 262; *Madison, &c., Pl. R. Co. vs. Watertown Pl. R. Co.*, 5 Wis., 173; *Rex vs. Mayor and Aldermen of London*, 3 B. & A., 255, 271.

*Coon & Cotton*, for respondent, argued that the assignment by the railroad company, of money due on a stock subscription, was unauthorized and void, as against public policy, and cited *McCullough vs. Moss*, 5 Denio, 518.

*By the Court*, PAINE, J. The single question presented on this appeal is, whether a railroad company, in carrying out the enterprise authorized by its charter, has any power to assign its stock subscriptions. We think it has the power. A stock subscription is nothing but a contract, by which the subscriber is bound to pay the company certain amounts. It would clearly be assignable as between individuals, and we can see no reason why it should not, in the case of a corporation, acting in execution of the powers conferred by its charter.

The fact that a company may abuse its power, and make contracts ruinous to itself, and to the value of its stock, does not seem to be a sufficient reason for denying the power. For they may, undoubtedly, do this whether this power of assignment exists or not. They may make extravagant contracts for materials, for land, and for labor in building the road, and thus make their stock worthless, as often happens. They become insolvent, receivers' are appointed, who may compel the payment of unpaid stock subscriptions for the benefit of creditors, created by these extravagant and ruinous contracts.

The fact, therefore, that a company may ruin itself by indiscreet contracts, if such an assignment is allowed, is no reason against the power; for it may ruin itself by such contracts without such a power.

At all events, even though it might be a reason for the legislature to impose a restriction, it is no reason for the court, where the charter contains no such restriction, but gives the general power to make all contracts which the convenience or interest of the company may require, to deny the power to make this particular contract. The reasoning in the case of *Clark vs. Farrington*, decided at this term (11 Wis., 306), is applicable to the question. The order of the court below sustaining the demurrer, is reversed, with costs, and the cause remanded for further proceedings.